IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBERT A. C.,                           )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )    Case No.  22-CV-533-MTS
                                        )
MARTIN O'MALLEY,[1]                     )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )

**OPINION AND ORDER**

Plaintiff Robert A. C. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant— taking into account his age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g).  A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence.  *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On August 8, 2020, Plaintiff filed applications for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the SSA and Title XVI supplemental security income, 42 U.S.C. § 1381, *et seq.* (R. 16, 289–98, 310–11).  He alleged an inability to work beginning on July 1, 2016. (R. 290, 310).  Plaintiff was forty-seven years old at the time of the ALJ's decision. (R. 24, 25). He has at least a high school education and past relevant work as a house repairer.  (R. 23).

Plaintiff's application was denied both initially and upon reconsideration.  (R. 152–61, 164–74).  On July 8, 2022, ALJ Michael Mannes issued a decision denying benefits and finding Plaintiff not disabled.  (R. 16–25).  Plaintiff sought review by the Appeals Council, which was

denied on October 13, 2022. (R. 1–7). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since July 1, 2016. (R. 19). At step two, he found Plaintiff suffered from the severe impairments of spine disorders, peripheral neuropathy, gastroesophageal reflux disease ("GERD"), and substance addiction disorders. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 20). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work" with the following additional limitations:

> [E]xcept occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, frequently balancing and kneeling, occasionally stooping, crouching or crawling, occasional reaching overhead bilaterally, frequently handling and fingering bilaterally, additionally must have a sit stand option defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every 30 minutes and without leaving the work station as not to diminish pace or production (the change of position would be for purposes of comfort).

(R. 21).

At step four, the ALJ determined Plaintiff was unable to perform his past relevant work as a house repairer. (R. 23). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of cashier II, hand packager, and bench assembler, all of which he found existed in significant numbers in the national economy. (R. 25). As a result, the ALJ found Plaintiff had not been under a disability from July 1, 2016, through the date of decision. *Id.*

**Errors Alleged for Review**

Plaintiff asserts three general errors for review in his challenge to the Commissioner's denial of benefits. (Docket No. 8 at 6–10). First, Plaintiff argues the ALJ committed harmful error at step two of his assessment. *Id.* at 6–7. Second, Plaintiff asserts the ALJ also committed error at steps four and five of his RFC assessment. *Id.* at 7–9. Third, Plaintiff maintains the ALJ failed to fully and fairly develop the record. *Id.* at 9–10.

**The ALJ's Disability Determination at Step Two**

At step two, Plaintiff bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).[2] An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It also "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams*, 844 F.2d at 750. Consequently, a claimant's testimony alone is insufficient to establish a severe impairment. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and

---

[2] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. Examples of basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985).

findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]").

Although the burden of showing a severe impairment is *de minimis*, "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070–71 (10th Cir. 2007) (quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)).  An ALJ "must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004) (quotation omitted).  If the claimant is unable to make a *de minimus* showing of medical severity, then the disability determination process ends, and he is determined not disabled.  *Williams*, 844 F.2d at 751.

When considering the evidence at step two, "[t]he record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  "In addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010.  An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)).

Plaintiff seemingly argues that the ALJ erred at step two by not discussing both Plaintiff's severe and non-severe impairments, as "even non-severe impairments must be considered in the RFC."  (Docket No. 8 at 7).  At step two, the ALJ found "medically determinable mental

6

impairments of depressive, bipolar and related disorders, anxiety and obsessive compulsive disorders," but determined they were non-severe. (R. 19). The ALJ then proceeded through a very brief discussion of the "paragraph B" criteria, finding Plaintiff had mild limitations in understanding, remembering, or applying information, and his ability to concentrate, persist, or maintain pace, and no limitations in the other two criteria.[3] (R. 19–20). The ALJ's step-two analysis concluded with an advisory that "[t]he limitations identified in the 'paragraph B' criteria are not a [RFC] assessment," and that steps 4 and 5 require a more detailed assessment. (R. 20).

Although the step-two discussion is not the most robust seen by this Court, any error committed by the ALJ at this step is harmless, as he proceeded through steps three, four, and five, suggesting that Plaintiff's benefits could not be properly denied at step two. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ([A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Thus, the Court finds Plaintiff's step two argument to be unavailing.

### The Administrative Law Judge's RFC Determination

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The

---

[3] The other two criteria are interacting with others and Plaintiff's ability to adapt or manage himself. (R. 19–20).

ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Moreover, when assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments . . . including [] medically determinable impairments that are not 'severe,' . . . when we assess [a claimant's RFC].")).

Plaintiff's argument that the ALJ failed at steps four and five is two-fold. First, Plaintiff asserts that, because the ALJ allegedly failed to consider any mental limitations when formulating his RFC, the ALJ's hypothetical questions to the VE were fundamentally flawed. (Docket No. 8 at 7). Second, Plaintiff contends that the ALJ's assessment of the number of jobs available to Plaintiff in the national economy was incorrect and therefore not supported by substantial evidence. *Id.* at 8.

### A. Consideration of Plaintiff's Mental Limitations

At step two, the ALJ determined Plaintiff's "medically determinable mental impairments of depressive, bipolar and related disorders, anxiety and obsessive compulsive disorders, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (R. 19). As mentioned above, the ALJ then found Plaintiff had mild limitations in two of the four "paragraph B" criteria. (R. 19–20). Ultimately, the ALJ determined Plaintiff's mental impairments were non-severe. (R. 20).

The ALJ began his discussion of the RFC determination by stating that he considered Plaintiff's symptoms, the objective medical evidence, medical opinions, prior administrative medical findings, and other evidence. (R. 21). He then briefly discussed Plaintiff's testimony, which he found was not entirely consistent with the other evidence of record, noting "that he uses a cane for ambulation, but admitted that he does not have a prescription for it." (R. 21–22).

The ALJ proceeded through a discussion of the objective medical evidence, noting that he had considered the entire record, "even when not explicitly discussed." (R. 22). The ALJ specifically mentioned records from October 2020, February 2021, and July 2021, which indicated Plaintiff had normal muscle strength and tone, normal range of motion, normal imaging of the hands, and no evidence of muscle atrophy. *Id.* He also noted that, during a consultative examination in February 2021, Linh Tran Stephens, D.O., "noted that [Plaintiff] required the use of an assistive device to ambulate and with them, he ambulated with difficulty." *Id.* (citing R. 477–87). However, the ALJ found this to be inconsistent "with [Plaintiff's] lack of atrophy and completely normal imaging of his hands." (R. 22). As to the initial and reconsideration assessments completed by the state agency consultants, the ALJ found them to be "somewhat

unpersuasive." (R. 23) (citing R. 73–146). Both state agency consultants found that Plaintiff was capable of the full range of medium exertional work. *Id.* The ALJ determined that such conclusions were "not supported by cited findings such as hand tremors and is inconsistent with the longitudinal record including pain symptoms and sensory deficit that support limiting him both in handling and fingering as well as exertionally." (R. 23).

Regarding mental examinations, the ALJ discussed records from a consultative examination conducted by Peter Ciali, Ph.D., in January 2021, which indicated that Plaintiff "displayed fair insight and judgment," in addition to noting that Plaintiff "was only mildly impaired in his memory, understanding, and concentration." *Id.* (citing R. 471–76). The ALJ found Dr. Ciali's assessment to be persuasive, as it was "supported by cited findings from examination including the ability to complete testing and is consistent with his activities of daily life and exam findings with normal psychiatric findings." (R. 23).

The RFC determination is supported by substantial evidence. *See Wells*, 727 F.3d at 1069. The ALJ's decision demonstrates that he considered Plaintiff's severe and non-severe impairments, including the mild mental limitations from step two, as illustrated by his discussion of Dr. Ciali's records. (R. 22, 23). Additionally, Plaintiff has not questioned the ALJ's assessment of Dr. Ciali's opinion, nor directed the Court to any evidence demonstrating that the combined effect of Plaintiff's impairments would result in greater functional limitations than those outlined in the RFC. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). Lastly, because the ALJ presented a hypothetical question to the VE which included the limitations he adopted in the RFC (R. 21), there can be no step five error. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)). Thus, the Court is unpersuaded by Plaintiff's assertion that the ALJ failed to consider any mental limitations when formulating his

RFC and subsequently erred in the hypothetical questions posed to the VE.

### B. Number of Available Jobs

Plaintiff's second argument asserts that the ALJ incorrectly assessed the number of available jobs because "the decision does not mention the housekeeper/cleaner jobs [mentioned during the administrative hearing] and these are now out of the equation," leaving Plaintiff with a total of 38,190 jobs nationally, which is not a significant number of jobs. (Docket No. 8 at 8). He also argues that, because the total number of jobs available to Plaintiff is not significant, the VE's testimony did not provide the ALJ with substantial evidence. *Id.*

During the administrative hearing, the ALJ asked the VE several hypotheticals. (R. 32–72). The first hypothetical inquired as to whether an individual with Plaintiff's RFC—without the sit/stand option—would be able to perform work in the national economy. (R. 66). The VE testified that such a person could perform work as a housekeeping cleaner, cashier II, and hand packager. (R. 67). The ALJ then asked a second hypothetical as to whether an individual of Plaintiff's age, education, work history, and RFC—with a sit/stand option—could perform work in the national economy.[4] (R. 67–68). The VE responded that such an individual would be able to perform the jobs of cashier II, hand packager, and bench assembler for a total of 119,400 jobs nationally. (R. 68). However, the VE noted that the number of those jobs would be slightly reduced as a result of the inclusion of a sit/stand option.[5] (R. 68, 70). Despite the reductions, the ALJ found that the jobs of cashier II, hand packager, and bench assembler existed in significant numbers in the national economy. (R. 25).

---

[4] The second hypothetical posed by the ALJ included limitations which he adopted in the RFC. (R. 21).
[5] The number of cashier II jobs would be reduced by 90% for a total of 71,900 jobs. (R. 68). The number of hand packager jobs would be reduced by 50% for a total of 31,000 jobs. *Id.* The number of bench assembler jobs would be reduced by 50% for a total of 16,500 jobs. *Id.*

11

Although the available jobs identified by the ALJ must exist in significant numbers, the Tenth Circuit has declined to draw "a bright line [rule] establishing the number of jobs necessary to constitute a 'significant number.'" *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 649 (10th Cir. 2020) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Furthermore, "'numerical significance entails many fact-specific considerations requiring individualized evaluation' and 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Id.* at 650 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)). Plaintiff cites *Raymond v. Astrue*, 621 F.3d 1269 (10th Cir. 2009), for the proposition that there must be at least 152,000 jobs available to constitute a "significant number." (Docket No. 8 at 8). However, "152,000 is 'the lowest number of jobs' the Tenth Circuit has considered to be sufficient *for application of harmless error*." *Andria D. B. v. Kijakazi*, No. 20-cv-00439-SH, 2022 WL 873614, at *6 (N.D. Okla. Mar. 23, 2022) (emphasis added) (quoting *Evans v. Chater*, 640 F. App'x 731, 736 (10th Cir. 2016)). Plaintiff has not alleged any error necessitating the application of a harmless error analysis. Rather, Plaintiff requests that the Court substitute its own judgment for that of the ALJ, which it cannot do. Thus, the Court will not disturb the ALJ's determination that there are a significant number of available jobs in the national economy.

### The Administrative Law Judge's Development of the Record

Plaintiff's last argument is twofold. (Docket No. 8 at 9–10). First, Plaintiff asserts that the ALJ failed to properly develop the record because he did not rule out the presence of a cognitive disorder. *Id.* at 9. Second, Plaintiff argues that the ALJ erred by failing to include cane use in the hypothetical questions to the VE and by not describing "how he weighed the [physical] CE's opinion properly when she specifically evaluated the need for the use of a cane." *Id.*

12

### A. Rule Out Presence of Cognitive Disorder

While an ALJ must "ensure that an adequate record is developed . . . consistent with the issues raised," *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993)), "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)). Importantly, the existence of a mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Lankford v. Colvin*, 612 F. App'x 496, 499 (10th Cir. 2015) (quoting 20 C.F.R. §§ 404.1508, 416.908). However, "[w]here there is inconsistency in the medical evidence requiring resolution, or where the medical evidence in the record is insufficient to allow the ALJ to make a determination on the claim, a consultative examination may be required." *Rhonda M. S. v. Kijakazi*, No. 4:22-CV-200-CDL, 2023 WL 6295128, at *6 (N.D. Okla. Sept. 27, 2023) (citing 20 C.F.R. § 416.919a(b)). That being said, "[i]solated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Williams v. Barnhart*, 178 F. App'x 785, 789 (10th Cir. 2006) (quoting *Hawkins*, 113 F.3d at 1167).

Nevertheless, when a claimant is represented by counsel at the administrative hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored . . . [and] may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167–68 (citing *Glass v. Shalala*, 43 F.3d 1392, 1394–96 (10th Cir. 1994)). And,

13

while "the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

Dr. Ciali's consultative examination report, under a section labeled "diagnostic impressions," included a note stating, "R/O Mild Neurocognitive Disorder (with history of repeated concussions per claimant)." (R. 475). Additionally, under a section titled "prognosis and recommendations," Dr. Ciali stated that Plaintiff's "ability to perform work related mental activities including remembering information, understanding instructions, and maintaining sustained concentration is mildly impaired." *Id.* As discussed above, the ALJ found Dr. Ciali's opinion to be persuasive, specifically noting Dr. Ciali's findings that Plaintiff was only mildly impaired in his memory, understanding, and concentration. (R. 22–23).

The Court disagrees with Plaintiff that his subjective complaints of concussions (R. 63, 473–74), which are not supported by medical records, and Dr. Ciali's comment (R. 475) regarding a possible neurocognitive disorder—which appears to be based on Plaintiff's subjective complaints—create an inconsistency in the medical evidence that required the ALJ to further develop the record. *See Brown v. Berryhill*, No. 17-CV-00556-GKF-GBC, 2019 WL 2488730, at *2 (N.D. Okla. Mar. 11, 2019) (quoting *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009)) ("To trigger the duty to develop the record, 'the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.'"). Moreover, Plaintiff was represented by counsel at the hearing, who was responsible for ensuring "the claimant's case [was represented] in a way that the claimant's claims [we]re adequately explored," *Hawkins*, 113 F.3d at 1167–68, and could have requested that the ALJ order

an additional consultative psychological examination. *See Rhonda M. S.*, 2023 WL 6295128, at *5. Therefore, Plaintiff's argument that the ALJ failed to develop the record by not ruling out the presence of a cognitive disorder is unavailing.

### B. Consideration of Plaintiff's Cane Use

Pursuant to SSR 96-9p, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." 1996 WL 374185, at *7 (July 2, 1996). Thus, although a prescription is not required, there must be some medical documentation of the need for the use of a cane for it to be considered medically necessary. *See Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009); *Hille v. Colvin*, No. 15-CV-693-FHM, 2016 WL 7238951, at *2 (N.D. Okla. Dec. 13, 2016) ("Absent medical documentation of Plaintiff's need for a cane, Plaintiff's use of a cane does not enter into the calculation of Plaintiff's RFC."). However, a claimant's testimony and other non-medical reports, without medical support, do not constitute proper documentation of the need for a cane. *See Smith v. Colvin*, No. 14-cv-413-TLW, 2016 WL 915255, at *3 (N.D. Okla. Mar. 7, 2016).

In *Staples*, the Tenth Circuit found that the ALJ erred in discounting the claimant's cane use based solely on the claimant's lack of a prescription. 329 F. App'x at 191–92. The court then discussed two pieces of evidence referencing the claimant's cane use: 1) the mention of a doctor's record stating the claimant "still uses a cane to walk"; and 2) that another doctor would obtain a temporary handicap placard for the claimant. *Id.* at 192. However, this evidence did not satisfy SSR 96-9p's requirement that there be "more than generalized evidence of a condition that might require use of a cane." *Id.* Thus, the court concluded that the ALJ's error did not require remand because there was no evidence establishing the medical necessity for the use of a cane. *Id.*

15

Here, the ALJ's discussion noted Plaintiff's testimony that he uses a cane to ambulate, but that he also admitted to not having a prescription for it. (R. 21) (referencing R. 48). Later on, the ALJ discussed the consultative examination done by Dr. Stephens, which stated that Plaintiff "does require the use of assistive devices to ambulate." (R. 479). However, the ALJ found Dr. Stephens' findings to be inconsistent with Plaintiff's lack of atrophy. (R. 22). Although there are additional records which include observations of Plaintiff's cane use and antalgic gate, (R. 501, 530), the ALJ also noted consistent documentation of Plaintiff's normal range of motion and normal muscle strength and tone (R. 22).

While Dr. Stephens' statement that Plaintiff "does require the use of assistive devices to ambulate" appears to be more than merely observational, such as the statement referenced in *Staples*, the Court is not persuaded by Plaintiff's argument. (R. 479). The evidence of record supporting Plaintiff's cane use was limited, with several pieces of evidence based on Plaintiff's own subjective complaints. (*See* R. 48, 472–73, 477). Furthermore, the ALJ specifically discussed Plaintiff's testimony regarding his cane use and found that it was not entirely consistent with the medical evidence. (R. 21–22). The ALJ addressed Dr. Stephens' findings from February 2021 and noted that, during an examination in July 2021, Plaintiff moved all four extremities with normal range of motion. (R. 22). Lastly, although the state agency consultants determined Plaintiff was capable of a full range of medium exertional work, the ALJ limited Plaintiff's RFC to light work with additional exertional limitations. (R. 21, 23). The ALJ's decision demonstrates that he properly discussed Dr. Stephens' opinions and did not simply disregard Plaintiff's cane use when formulating the RFC.

**Conclusion**

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 12th day of January, 2023.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT